IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA FILED MAY 31 '13 AM11:46 USDCALS

Eric Myree Perkins

vs.                                                              13-286-KD-B

Kushla Water District, William Silver,
individually, Roy King, individually,
and James Todd, individually,

## JURY TRIAL DEMANDED

## COMPLAINT

1.  This is an action to recover actual, compensatory, liquidated, and punitive damages
    under Title VII of the Civil Rights Act the Court the following:

2.  Plaintiff, Eric Myree Perkins, is an adult resident citizen of 5612 Racine Avenue,
Mobile, AL, 36618.

3.  Defendant, Kushla Water District, is a public utility of the state of Alabama and may be
served with process by service at 6649 Highway 45, located in Eight Mile, Alabama.
       Defendant, William Silver is the Board Chairman of the Kushla Water District and may
be served with process by service at 7688 Pake Road, Saraland, AL, 36571.
       Defendant, Roy King is the Superintendant of the Kushla Water District and may be
served with process by service at 4901 Outlaw Road, Eight Mile, AL, 36613.
       Defendant, James Todd is the Office Manager of the Kushla Water District and may be
served with process by service at 5805 Grady Dunn Road, West, Wilmer, AL, 36587.

4.  This Court has federal question jurisdiction under Title VII of the Civil Rights Act.
These are sued individually and are leadership for the Kushla Water District. Defendant Roy King
is the supervisor who made the initial discriminatory discharge in this case. However, the
discharge decision was finally made by the Kushla Water District Board of Directors. These
individual Defendants are sued for race discrimination which is a violation of clearly settled law.

5. On July 24, 2012, the Plaintiff was brought before the Kushla Water District Personnel Committee by Roy King. The Plaintiff refused to sign a document entitled 'Cell Phone Usage policy' which no other employee was asked to sign or follow. Plaintiff inquired why no one else had been asked to sign the policy. Plaintiff addressed Roy King directly and asked if anyone else had signed the policy. King had not had any other policy sign the policy. The following day, while on the job two employees, Larry Smith and William Manley used their cell phones in the presence of the Plaintiff and Defendant King and nothing was said to them. Plaintiff asked Larry Smith if he had signed the Cell Phone Usage Policy and Smith stated that he had not. In fact, no other employee had signed it but the Plaintiff and King only sought to enforce the policy against the Plaintiff. This was a blatant act of discrimination by King and was racially motivated.

On October 3, 2012 Plaintiff again met with the Personnel Committee at Plaintiff's request and detailed to the Committee that King was not only allowing the Plaintiff's co-workers to use their cell phones in his presence, but had himself used the personal cell phone of William Manley Jr. King admitted that he had used Manley's phone, and defended his actions despite it being in direct violation of the policy. The Personnel Committee did nothing despite Plaintiff's stance that he was being singled out. This discriminatory action was open and blatant.

The Plaintiff began working at Kushla Water District on November 3, 2011. During his employment there he faced numerous cases of harassment from supervisors and co-workers. An environment of hostility was persistent.

The Plaintiff was hired to replace Jason Smith as an Operator Trainee. When Jason was hired, he had no experience in the water industry. He received training from King, James Todd and William Manley Jr. In his three year tenure, he failed the Operator's Examination twice. When the Plaintiff was hired to replace Jason Smith, he was not allowed to perform the same duties as his predecessor. The Board hired Larry Smith, the son of Board member, Mattie Smith to perform the office duties which had previously been assigned to Jason Smith. There was nothing which precluded the Plaintiff from performing the in an office setting. In fact, The Plaintiff's work and educational background were suited to office duties. The Plaintiff's race was the reason he was not allowed to perform those duties.

On December 7, 2011, James Todd, issued a written discipline to the Plaintiff for 'time allowed for meter reading'. The Plaintiff objected stating that neither of his fellow meter readers, Charles Skipworth nor Larry Smith had been disciplined. There had also been three days of intermittent rain. Many of the water meters were not easily readable due to mud and water covering the meters. The Defendant explained all of this to Todd to no avail. The Defendant's predecessor had never been disciplined for 'time allowed for meter reading' despite having misread entire routes, causing time to be lost.

On December 22, 2011, after a day of meter reading, the Plaintiff gave a listing of meters which needed to be raised or dug out. This had been the duty of the Maintenance Technician, William Manley Jr. The following afternoon the Plaintiff was accosted by an irate William Manley Jr. who informed the Plaintiff that Manley and King had looked at a few of the sites and that King deemed that while they might need attention they were 'not that bad'. He even

informed that he had called the Board Chairman, William Silver (on his personal cell phone) and told him that he was not going to do the work.  At the following staff meeting, King assigned those tasks to the Plaintiff rather than Manley.  Before the Plaintiff was hired, it had been the duty of Charles Skipworth to perform landscaping at the well sites.  After three months, these tasks were given to Plaintiff.  The Plaintiff had been promised at the time he was hired that he would be given time on the job to study for the Water Operator's exam by the Board.  He was also to receive the resources and training manual.  King did not order those training manuals until December 9, 2011.  After the Plaintiff was assigned meter cleaning and grass cutting duties he was no longer given any time to study on the job.  Despite these obstacles, the Plaintiff passed the Water Operator's exam.

When the Plaintiff began working at Kushla Water District, his hours were 8a.m. to 4p.m. M-F with the exception of meter reading days which were 6:30a.m.to 2:30p.m.  After six months, King informed Plaintiff that he would have to take at least a thirty minute lunch and leave at 4:30p.m.  The Plaintiff asked why and was told this was a directive of the Board chairman.  King said that it was the law.  Plaintiff responded that Silver had been signing his checks weekly for six months without any problems and that someone else had obviously made an objection.  King admitted that it was Todd who had objected.  Plaintiff stated that he would also take a thirty minute lunch during meter reading.

On March 20, 2012, King was tasked with ensuring that the Plaintiff receive training on installing services by Manley.  This was a directive from Board Member, Tommy Vice.  However, the Plaintiff was only taken out once by Manley.  He refused to train the Plaintiff, however he did train Larry Smith at those tasks.

On May 22, 2012, Plaintiff informed Charles Skipworth during their first day of meter reading that due to the new directive from Silver he would be taking a thirty minute lunch.  Skipworth became irate and called the Silver (on his personal cell phone) to protest.  The Plaintiff spoke to the Chairman and reiterated his decision.  Following the call, Skipworth began to berate the Plaintiff who remained steadfast and informed Skipworth that he would not be talked to in that manner.  Skipworth returned to the office where he subsequently quit.  The Plaintiff was left to read meters alone that day and the following two days before the task was assigned to others.

On July 24, 2012, at the Personnel meeting the Plaintiff was subjected to questioning by the Committee.  King complained the Plaintiff drove too slowly, which is to say that he drove the speed limit.  King attempted to have the Plaintiff fired by filling his personnel file with false allegations.

When hired as an Operator Trainee, the Plaintiff was told that his training, testing and the cost of obtaining his license would be paid for by Kushla Water.  Training and testing were paid in advance as agreed, but when the time came to submit for his license, King refused to sign the verification form and Silver refused to pay the seventy dollar verification fee.  The Plaintiff approached King on August 1, which was the day he became eligible to apply for his Operator's license and asked King to sign his verification form.  He refused.  He said he needed to speak with Silver.  When the Plaintiff spoke with Silver on August 3, Silver stated that he needed to go

over the form.  Silver told the Plaintiff that he would meet with him the following Monday, August 6.  It was not until Friday, August 10 that Silver and King met with the Plaintiff.  King stated that he did not believe that the Plaintiff had the necessary experience.  The Plaintiff assured him that he did indeed have the experience and that it was the job of Tom Madigan of the Alabama Department of Environmental Management (A.D.E.M.) to make that determination.  The Plaintiff only needed King to verify his experience adding that King could give his opinion on the form by checking No on the form.  The Plaintiff was only able to get Silver and King to sign off on the Verification form by agreeing to pay for the verification himself and to remove duties which he had actually performed from the verification form which lessened his chances of becoming an Operator.  King and Silver deliberately attempted to sabotage the Plaintiff's chances of becoming an Operator, which was supposedly the reason he was hired in the first place.  The Plaintiff removed several duties from the form and paid the seventy dollars himself.

The Plaintiff filed a discrimination complaint with the EEOC.  The charge number was 420-2012-02894.  Once Kushla Water received the complaint, the harassment increased.  On September 4, at the end of a day in which the Plaintiff read all water meters while Larry Smith drove (the two were supposed to share those duties, but Smith refused to do anything but drive).  Smith attempted to coerce the Plaintiff into coming in the following day at 6:30 a.m. rather than 8 a.m. as the two had been doing.  The Plaintiff refused.  Smith then repeated his demand to Todd, who called King (on his personal cell phone) and made the demand to King.  The meter reading hours were then changed to 6:30 a.m. just as Smith had demanded.

On September 14 James Todd was given supervisory duties over the Plaintiff during meter reading and he attempted to force the Plaintiff to use a device attached to the back of the truck which the Plaintiff had informed him caused him to become dizzy.  Todd issued five written disciplinary warnings to the Plaintiff for his refusal to use the device.  The Plaintiff then filed a Retaliation complaint with the EEOC.  That charge number was 420-2012-03331.

Kushla Water is in violation of the Form 400-1, Equal Opportunity Agreement, Form FHA 400-4, Nondiscrimination Agreement which it signed on August 22, 1974.  Since that time, the Plaintiff is the ONLY African-American employee that Kushla Water District has employed in its thirty-eight year existence.  The harassment the Plaintiff suffered was racially motivated.  The Plaintiff was held to different standards than the white employees.  The Plaintiff was allowed to mow grass and clean water meters in Kushla, but not to perform as an Operator there.  The Plaintiff eventually resigned his employment there.  At the time that he resigned, he was making $12.50 hourly.  He had been promised a pay raise to $18 hourly once he earned his Operator's license.  Plaintiff became a licensed Operator on September 1, 2012, and requested that the Board honor that promise and they failed to do so.  Clearly, they never expected him to become an Operator.  The Plaintiff fulfilled every promise that he made when he interviewed for the job.

6. Plaintiff prays for the following relief:

Lost salary and benefits;

Future lost salary and benefits and out-of-pocket expenses;

Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, shame, loss of self-esteem, fear embarrassment, depression, and injury to reputation or professional standing which plaintiff has suffered or may suffer in future;

Reasonable attorney's fees.

Respectfully submitted,

Eric Myree Perkins, pro se

5612 Racine Avenue

Mobile, AL, 36618

251-289-1110

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Eric M. Perkins<br>5612 Racine Avenue<br>Mobile, AL 36618 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street<br>Birmingham, AL 35205 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 420-2012-02894 | Ronald Lyas,<br>Investigator | | (205) 212-2114 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [X] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [ ] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Samuel Hall for*

FEB 2 6 2013

Enclosures(s)

**Delner Franklin-Thomas,**
**District Director**

*(Date Mailed)*

cc:     Thomas M. Galloway, Jr.
         Galloway, Wettermark, Everest
         Rutens & Gaillard, LLP.
         Post Office Box 16629
         Mobile, AL 36616-0629